UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| Kenneth W. Thomas, | Case No. 13-57496 |
| Debtor. _____/ | Hon. Phillip J. Shefferly |
| Daniel M. McDermott, United States Trustee, | Adversary Proceeding No. 13-5408-PJS |
| Plaintiff, | |
| v. | |
| Cecelia A. Kelly, | |
| Defendant. _____/ | |

**OPINION REGARDING UNITED STATES TRUSTEE'S
REQUEST FOR RELIEF BASED UPON FINDING OF CONTEMPT**

**Introduction**

The United States Trustee ("UST") filed a motion for contempt and for other relief against Cecelia A. Kelly ("Kelly"), based upon the UST's assertion that Kelly violated an injunction that prohibits her from acting as a bankruptcy petition preparer. The Court has already granted the UST's motion in part, finding Kelly in contempt. This opinion addresses the UST's request for other relief against Kelly. For the reasons explained in this opinion, the Court holds that the finding of contempt previously made by the Court is well supported, but the UST's request for other relief must be denied.

## Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a). "Bankruptcy courts, like Article III courts, enjoy inherent power to sanction parties for improper conduct[,]" Mapother & Mapother, P.S.C. v. Cooper (In re Downs), 103 F.3d 472, 477 (6th Cir. 1996), as well as statutory authority under § 105(a) of the Bankruptcy Code. "'The consideration of sanctions is a core proceeding arising in a case under title 11, as described by 28 U.S.C. § 157, as it is inextricably intertwined with the bankruptcy case itself, which is undoubtedly a core proceeding.'" In re Mehlhose, 469 B.R. 694, 709 (Bankr. E.D. Mich. 2012) (quoting John Richards Homes Bldg. Co., L.L.C. v. Adell (In re John Richards Homes Bldg. Co., L.L.C.), 404 B.R. 220, 225 (E.D. Mich. 2009)). "Additionally, '[t]here can be no more fundamental exercise of core subject matter jurisdiction by the bankruptcy court than its policing of professionals whom debtors pay to render service in connection with their cases.'" In re Rose, 314 B.R. 663, 683 (Bankr. E.D. Tenn. 2004) (quoting McDow v. We the People Forms & Serv. Ctrs., Inc. (In re Douglas), 304 B.R. 223, 232 (Bankr. D. Md. 2003)). "'[B]ecause the petition and schedules are at the heart of the bankruptcy process, matters attendant to [their] preparation are "core" proceedings.'" Id. (quoting In re Moore, 283 B.R. 852, 857 (Bankr. E.D.N.C. 2002)).

## Procedural History

On December 5, 2013, the UST filed a complaint seeking a permanent injunction and monetary damages against Kelly for violations of § 110 of the Bankruptcy Code. The complaint alleged that Kelly is an individual conducting business as a bankruptcy petition preparer within the meaning of § 110(a)(1) of the Bankruptcy Code. The complaint alleged that Kelly violated various provisions of § 110 in connection with Chapter 7 bankruptcy case no. 13-57496 filed by Kenneth W.

Thomas. Kelly answered the complaint pro se. On March 4, 2014, the UST and Kelly filed a stipulation providing for the entry of an order for injunctive relief. On March 5, 2014, the Court entered a consent order for injunctive relief ("Injunction") (ECF No. 16). The Injunction permanently enjoined Kelly from acting as a bankruptcy petition preparer in the Eastern District of Michigan, and from providing any bankruptcy assistance to individuals, whether under Kelly's name, any other name, or through any corporate form. The Injunction resolved all of the issues and all of the relief sought in the UST's complaint. After entering the Injunction, the Court closed this adversary proceeding.

The UST became aware that Kelly was acting in violation of the Injunction. On April 8, 2014, the UST asked the Court to reopen the adversary proceeding to file a motion for contempt against Kelly. The Court reopened the adversary proceeding that day. The following day, the UST filed a motion for contempt and for other relief ("Contempt Motion") (ECF No. 19), alleging that Kelly violated the Injunction by preparing the bankruptcy petition of Synthia Westbrook, in case no. 14-43579. The UST served the Contempt Motion upon Kelly. When Kelly did not timely file a response to the Contempt Motion, the UST filed a certification of non-response.

On May 9, 2014, the Court entered an order finding Kelly in contempt and scheduling further proceedings ("Contempt Order") (ECF No. 21). The Contempt Order made a specific finding that Kelly violated the Injunction and held her in contempt of court. The Contempt Order required Kelly to pay a fine of $2,000.00 to the Access to Bankruptcy Court Fund, and to pay costs of $350.00 to the UST for bringing the Contempt Motion. Finally, to monitor Kelly's compliance with the Contempt Order and her ongoing compliance with the Injunction, the Contempt Order also scheduled further proceedings to take place on June 16, 2014 at 11:30 a.m., for the purpose of

considering the additional remedies that had been requested by the UST in the Contempt Motion, including a request for incarceration and for referral to the United States District Court for criminal proceedings.

On June 12, 2014, Kelly filed a motion to adjourn the June 16, 2014 hearing. The Court granted the motion by order entered on June 17, 2014, but specifically provided in such order that Kelly must attend the hearing on the adjourned date and time of August 25, 2014 at 2:00 p.m., and further provided that the UST would be permitted to adduce evidence at the adjourned hearing in support of the additional relief that it requested the Court to impose against Kelly. The order granting the adjournment also provided that Kelly would continue to remain bound by the Contempt Order and the Injunction.

On August 25, 2014, the Court held the adjourned hearing. The UST and Kelly both appeared. The UST called two witnesses and offered five exhibits into evidence. Kelly did not adduce any evidence, but requested that she be given additional time in which to hire an attorney and to bring to the Court her own evidence. The Court granted her request. The evidentiary hearing was then continued until October 9, 2014.

Prior to the October 9, 2014 adjourned hearing, Kelly requested another adjournment. The Court granted this request, and the continued hearing was again rescheduled, this time for November 5, 2014 at 1:30 p.m.

On November 5, 2014, the Court held the continued hearing. Although Kelly had requested that the hearing be adjourned to that date so that she may hire a lawyer, Kelly still appeared at the hearing pro se. Altogether, five witnesses testified either at the original hearing on August 25, 2014 or at the continued hearing on November 5, 2014. The UST called three witnesses: Synthia

Westbrook, the debtor for whom Kelly acted as a bankruptcy petition preparer in violation of the Injunction, Karen Riggs, a UST employee, and Nada Miladinovich, another UST employee. Kelly called two witnesses: Denise Berry and herself. The Court received into evidence the UST's exhibits 1 through 11, and Kelly's exhibits B, D, E, and F. At the conclusion of the hearing, the Court took the matter under advisement and indicated that it would issue a written decision.

## Applicable Law

The Contempt Order has already found Kelly to be in contempt, and has already imposed monetary remedies against Kelly. The Contempt Motion also asked the Court to impose additional remedies against Kelly, which the UST is pursuing because of Kelly's non-compliance with the Contempt Order and Injunction. Despite the fact that the Court has already made a finding of contempt, it is worth first reviewing the elements of contempt.

"[T]he objective on any contempt determination is to enforce the message that court orders and judgments are to be taken seriously." Electrical Workers Pension Trust Fund of Local Union # 58, IBEW v. Gary's Electric Service Co., 340 F.3d 373, 385 (6th Cir. 2003) (citation omitted). "Although civil contempt may serve incidentally to vindicate the court's authority, its primary purposes are to compel obedience to a court order and compensate for injuries caused by noncompliance." TWM Manufacturing Co. v. Dura Corp., 722 F.2d 1261, 1273 (6th Cir. 1983) (citing in part McCrone v. United States, 307 U.S. 61, 64 (1939)) (other citations omitted); see also United States v. Bayshore Associates, Inc., 934 F.2d 1391, 1400 (6th Cir. 1991) ("[T]he purpose of civil contempt is to coerce an individual to perform an act or to compensate an injured complainant.") (citing United States v. Mine Workers, 330 U.S. 258, 303-04 (1947)).

-5-

"[C]ourts have distinguished between the compensatory and coercive functions of contempt orders. Compensatory contempt orders compensate the party harmed by the other party's contemptuous actions; coercive orders seek to cajole the party in contempt to act in the manner desired by the court." Consolidated Rail Corp. v. Yashinsky, 170 F.3d 591, 595 (6th Cir. 1999) (citation and footnote omitted). Under civil contempt, "[t]he contemnor always has the ability to purge himself of contempt by obeying the court order." In re Morgan, 109 B.R. 297, 299 (W.D. Tenn. 1989). Using contempt powers to punish a party renders the contempt criminal rather than civil. Consolidated Rail v. Yashinsky, 170 F.3d at 596 (citations omitted). "Criminal contempt is punitive rather than remedial. It punishes disobedience of the court's order as vindication of the court's authority. The contemnor serves a fixed sentence and cannot gain release by complying with the order." In re Morgan, 109 B.R. at 299.

To obtain a finding of contempt, the moving party must prove, by clear and convincing evidence, (1) knowledge (2) of a "definite and specific order of the court" that (3) required the performance or non-performance of a particular act or acts. Rolex Watch U.S.A., Inc. v. Crowley, 74 F.3d 716, 720 (6th Cir. 1996) (citation omitted); United States v. Conces, 507 F.3d 1028, 1041-42 (6th Cir. 2007).

> The court must strictly construe the order alleged to have been violated, and the facts must constitute a plain violation of the order. The provisions alleged to have been violated must be clear and definite. A finding of contempt should not be made unless the order violated is clear and explicit and the act complained of is clearly proscribed. The judge must find a clear and undoubted disobedience of a clear and unequivocal command.
>
> In this connection, the party alleged to have disobeyed the order must be able to ascertain from the four corners of the order what acts are required or forbidden. . . . Any ambiguities or omissions in the order must be construed in favor of the defendant.

13-05408-pjs    Doc 33    Filed 11/25/14    Entered 11/25/14 16:15:36    Page 6 of 14

Mueller v. Hall (In re Parker), No. 06-8053, 2007 WL 1376081, at *9 (B.A.P. 6th Cir. May 10, 2007 (internal quotation marks and citation omitted).

By entering the Contempt Order, the Court necessarily found that the UST had shown all of the elements necessary for a finding of contempt. The Court was satisfied that the UST had proven that Kelly knew of the Injunction, the Injunction was definite and specific, the Injunction required the non-performance of very specific acts, and Kelly had violated the Injunction. The purpose of the evidentiary hearings on August 25, 2014 and November 5, 2014 was not to determine whether Kelly was in contempt for violation of the Injunction, the Contempt Order having already made that determination. Rather, the purpose of the hearings was to determine whether any of the additional remedies requested by the UST in the Contempt Motion should be imposed by the Court.

"[T]he magnitude of the coercive sanction to be imposed requires a weighing of the harm caused by noncompliance 'and the probable effectiveness of any suggested sanction in bringing about the result desired.'" United States v. Work Wear Corp., 602 F.2d 110, 116 n.14 (6th Cir. 1979) (quoting United States v. United Mine Workers of America, 330 U.S. 258, 304 (1947)). "'[Relief in a civil contempt proceeding] often takes the form of a fine in the amount of the damage sustained by plaintiff.'" Electrical Workers Pension Trust Fund, 340 F.3d at 385 (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2960, at 369-70 (2d ed. 1995)). In Uniroyal Goodrich Tire Co. v. Hudson, 97 F.3d 1452, 1996 WL 520789, at *7 (6th Cir. Sept. 12, 1996), the Sixth Circuit found that the district court did not abuse its discretion in precluding a former employee from testifying "as a sanction for his failure to abide by the court's preliminary injunction." In certain extreme circumstances, relief in the form of incarceration may be warranted. See United States v. Conces, 507 F.3d at 1043-44 (finding that a

tax fraud counselor's "contumacious conduct" in thwarting discovery post-injunction compelled his incarceration).

## **Findings of Fact**

Based upon the evidentiary record made at the hearings held on August 25, 2014 and November 5, 2014, the Court finds the following facts.

Westbrook and Berry were co-workers. Berry provided Westbrook contact information for Kelly to assist Westbrook in preparing her bankruptcy case. On March 6, 2014, Westbrook went to Kelly's residence on Harriet Street in Romulus for Kelly to prepare Westbrook's bankruptcy case. Westbrook paid $100.00 to Kelly at that time, and agreed to pay another $100.00 later. Kelly gave Westbrook a receipt (Exhibit 1) signed by Kelly acknowledging receipt of $100.00 from Westbrook on March 6, 2014.

After Westbrook filed her bankruptcy case, Kelly pursued Westbrook to collect the balance of $100.00 owed to her. Kelly sent text messages to Westbrook (Exhibit 2) requesting payment. Kelly also left voice mail messages (Exhibits 7 through 10) on Westbrook's telephone.

Kelly denies that she provided any assistance to Westbrook in filing her bankruptcy case. Kelly denies even knowing Westbrook. Kelly testified that she had surgery on her hand on March 5, 2014 and was in no condition to help Westbrook the next day to prepare her bankruptcy case. Although Westbrook filed an amended declaration in her case stating that she had assistance from "Miss Cecilia," Kelly insists that she did not assist Westbrook in any way. Also, Kelly insists that she did not leave the text messages or voice mails on Westbrook's phone, and that the phone number from which the text messages and voice mails came was not her phone.

Westbrook's testimony directly contradicts Kelly. Westbrook testified to the services that Kelly performed, the date of such services, the cost of such services and Kelly's efforts to collect the balance of the fee that she charged Westbrook. Although Kelly's denials were vehement, they are overcome by substantial evidence in the record that supports Westbrook's testimony that Kelly assisted her in filing her bankruptcy case on March 6, 2014.

Westbrook's testimony is corroborated by Riggs. Riggs is a paralegal at the UST's office whose job responsibilities include reviewing cases in which bankruptcy petition preparers are involved, and monitoring activities by bankruptcy petition preparers in the Eastern District of Michigan. Riggs testified that she compared the matrix and paperwork filed in Westbrook's bankruptcy with the matrix and paperwork filed in two other bankruptcy cases that Kelly admits preparing for two other individual debtors. Those two cases are Tenika Prince, case no. 13-59824 (Exhibit 3), and Kenneth W. Thomas, case no. 13-57496 (Exhibit 4). Riggs testified that the markings in the Prince and Thomas cases are identical to the markings in the Westbrook case. Specifically, the matrix in each of the three cases has the identical font, and it is a font that is not used in other bankruptcy cases reviewed by Riggs.

Riggs also identified the telephone number from which the text messages and voice mail messages were sent to Westbrook as 737-334-0636, and testified that this telephone number was registered to Kelly. In support, Riggs identified a National Comprehensive Report (Exhibit 11) accessed by the UST to obtain personal identification information regarding Kelly. This report shows multiple telephone numbers for Kelly, including 737-334-0636. Kelly conceded in her testimony that all of the telephone numbers shown on this report belong to her, with one exception: 734-334-0636. Kelly's only explanation as to why that telephone number would have been included

on the National Comprehensive Report is that she must have been the victim of identity theft. But Kelly did not support this contention with any credible evidence.

Westbrook's testimony is also corroborated by Miladinovich. Miladinovich testified that she too is a paralegal at the UST's office. She is responsible for reviewing cases and preserving recordings for the UST. Miladinovich testified that Westbrook brought her telephone to Miladinovich, which Miladinovich then accessed by taking a screen shot of Westbrook's contacts. The telephone number 734-334-0636 appeared as a contact on Westbrook's telephone under the name "Cecelia." Miladinovich made a recording (Exhibit 6) of all of the voice mail messages sent from that telephone number to Westbrook's telephone, and printed out all of the dates, times and content of the text messages and voice mail messages sent from that telephone number to Westbrook (Exhibits 7 through 10). The recording of the voice mails was played in open court during the hearing on November 5, 2014. The voice on the messages matches Kelly's voice. The telephone number from which the text messages and voice mail messages were sent matches the telephone number shown as Kelly's telephone number on the National Comprehensive Report (Exhibit 11) obtained by Riggs. And the name shown on Westbrook's telephone as the contact for that telephone number is Cecelia. All of this evidence corroborates Westbrook's testimony that Kelly helped her prepare and file her bankruptcy case on March 6, 2014, two days after the Injunction, and then sought to collect her fee from Westbrook after that date.

Although Kelly denied that the voice on the recordings was hers, or that she sent the text messages or voice mail messages, her testimony was not corroborated by any other evidence[1] and

---

[1] Berry's testimony was not probative of any of the issues before the Court.

is greatly outweighed by the testimony of Westbrook, Riggs, and Miladinovich, and the exhibits introduced into evidence.

The Court finds that Kelly assisted Westbrook in violation of the Injunction. Although Kelly's testimony that she did not assist Westbrook in violation of the Injunction is controverted by other substantial and credible evidence in the record, Kelly did testify credibly and without contradiction that she has not assisted anyone else in filing bankruptcy after the Injunction was entered. Therefore, the Court finds that the only violation by Kelly of the Injunction consists of her assistance to Westbrook.

## Discussion

Kelly has not filed a motion seeking any relief from the Contempt Order so, in a technical sense, there is no procedure before the Court that requires the Court to reconsider the Contempt Order. However, with the benefit of a more fully developed factual record, the Court notes that there is ample evidence to support the finding of contempt contained in the Contempt Order. Stated another way, there is no evidence in the record that would in any way support the Court altering the funding of contempt that it made in the Contempt Order. But the record before the Court does not support the imposition of any additional remedies. Kelly's violation of the Injunction on this record is limited to her assistance of Westbrook, which took place two days after the Injunction was entered. This is not a case where the UST produced multiple debtors testifying that an injunction against a bankruptcy petition preparer had been repeatedly violated. Nor did the UST introduce evidence of a pattern of conduct that has continued after the Injunction was entered. Rather, Kelly's assistance in the Westbrook case appears to be one isolated instance where she violated the Injunction. That is not to say that the Court condones or excuses in any respect Kelly's violation

of the Injunction, but it is an important fact for the Court to consider in deciding whether the Court should impose any of the additional remedies requested by the UST in the Contempt Motion.

The starting point for the Court in considering any additional remedies is the notion that civil contempt is intended not as a punishment but rather as an inducement to compel compliance with a court order, and "to enforce the message that court orders . . . are to be taken seriously." Electrical Workers Pension Trust Fund, 340 F.3d at 385. With that in mind, the Court is convinced that the UST has now gotten Kelly's full attention. The Court is persuaded that the finding of contempt and the monetary remedies already set forth in the Contempt Order are sufficient to induce Kelly to comply with the Injunction. The Court does not consider it necessary to impose any additional remedies or make a referral to the United States District Court for criminal contempt.

In reaching this determination, the Court notes that, quite apart from the remedies imposed in the Contempt Order, Kelly is also the subject of a separate order entered in the Westbrook case by the bankruptcy judge assigned to that case. On June 10, 2014, Judge Marci B. McIvor entered an order in Westbrook's bankruptcy case no. 14-43579 imposing multiple remedies against Kelly. That order required Kelly to pay $2,000.00 to Westbrook, $4,500.00 to the UST, and $10,000.00 to the Access to Bankruptcy Court Fund. These remedies were imposed by Judge McIvor upon the request of the UST following a hearing in the Westbrook case held on June 10, 2014, based upon violations of § 110 of the Bankruptcy Code. They are separate and apart from the UST's Contempt Motion before this Court, which seeks remedies from this Court because of the Debtor's violation of the Injunction entered by this Court.

Having the benefit of a more fully developed factual record showing that Kelly violated the Injunction only in assisting Westbrook, especially in light of Judge McIvor's order *in that very case*

-12-

assessing $16,500.00 in monetary sanctions, leads the Court to inquire whether the sanctions already imposed by the Contempt Order may have already crossed the line into punitive sanctions. The Court must weigh the harm caused by Kelly's violation of the Injunction against the effectiveness of sanctions in bringing about the result desired. United States v. Work Wear Corp., 602 F.2d at 116 n.14. On balance, after considering all of the evidence in the record, and finding credible Kelly's statement that she is no longer acting as a bankruptcy petition preparer, the Court finds that the remedies imposed by Judge McIvor's order are sufficient to induce Kelly to comply with the Injunction, without the need for further sanctions. Other than the award of $350.00 in costs to the UST for bringing the Contempt Motion, any additional sanctions on Kelly, including the $2,000.00 already required by the Contempt Order, seem punitive in nature and would exceed the purpose of a civil contempt finding. Therefore, the Court declines to impose any additional remedies, and will vacate the provision in the Contempt Order requiring Kelly to pay a fine of $2,000.00 to the Access to Bankruptcy Court Fund.

## **Conclusion**

The Court scheduled the evidentiary hearing on August 25, 2014 and November 5, 2014 at the UST's request to consider the imposition of additional remedies because of Kelly's violation of the Injunction. The testimony and other evidence now before the Court persuades the Court that the Contempt Order was properly entered, and that the finding of contempt contained in it is fully supported by the facts. But the Court is also persuaded that the remedies imposed by Judge McIvor in the Westbrook case, plus the award of costs to the UST in the Contempt Order, are sufficient to accomplish the purpose of making a finding of civil contempt: that is, to induce Kelly to abide by the Injunction. The Court finds that no further remedies are warranted at this time. However, in the

event that it comes to the Court's attention that there are any further violations of the Injunction by Kelly, the entry of this order is without prejudice to the UST's right to seek additional relief in the future. It is the Court's fervent hope that Kelly will abide by the Injunction going forward but, in the event that there are any further violations, the Court will consider the imposition of any additional remedies to induce Kelly to fully comply with the Injunction. The Court will enter a separate order consistent with this opinion.

.

**Signed on November 25, 2014**

                                              **/s/ Phillip J. Shefferly**
                                              **Phillip J. Shefferly**
                                              **United States Bankruptcy Judge**